IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| JAY HAWKINS et al., <br><br> Plaintiffs, <br><br> v. <br><br> ISIAH LEGGETT et al., <br><br> Defendants. | Civil Action No. 12-cv-00623 AW |

## MEMORANDUM OPINION

Pending before the Court are several motions. Of particular importance are Plaintiff Jay Hawkins' Motion for Partial Summary Judgment and Defendants' Cross-Motion for Partial Summary Judgment. The Court has reviewed the record and deems no hearing necessary. For the following reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **GRANTS** Defendants' Cross-Motion for Partial Summary Judgment.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This case sounds in employment discrimination. Plaintiff Jay Hawkins is an African-American male who worked for the Montgomery County Department of Corrections and Rehabilitation (the County) from 2006 to 2011. The County terminated Plaintiff based on allegations of misconduct that Plaintiff disputes. The County gave Plaintiff notice of the charges against him. In response, Plaintiff voluntarily participated in an ADR process pursuant to a collective bargaining agreement between his union and the County. The ADR committee could not make a recommendation, and the County terminated Plaintiff. Plaintiff grieved his termination. Consequently, Plaintiff and the County participated in a two-day arbitration after

1

which they submitted written arguments. The arbitrator found just cause for the County's termination of Plaintiff.

Plaintiff filed this lawsuit on February 27, 2012. Doc. No. 1. Although Plaintiff's Complaint sounds in employment discrimination, it contains an assortment of due process claims under federal and state law. Plaintiff filed a parallel action arising out of the same operative facts before Judge Chasanow. In the parallel action, Plaintiff asserted related discrimination and retaliation claims. The case before Judge Chasanow was later consolidated with this case.

On July 16, 2012, Plaintiff filed a Motion for Partial Summary Judgment. Doc. No. 22. Plaintiff argues therein that he is entitled to summary judgment on certain due process claims (i.e., Counts V, VI, and IX). Defendants filed a Cross-Motion for Partial Summary Judgment on the same Counts. Doc. No. 24. The Parties completed briefing on these Motions.

Plaintiff later filed a Motion for Leave to File Surreply and to Supplement Record (Motion for Leave). Doc. No. 41. In this Motion, Plaintiff argues that a small part of the deposition testimony of one Defendant shows that Plaintiff should prevail on one or more of the claims in question. Also, a couple of Motions for Extension of Time are pending before the Court.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. LEGAL ANALYSIS

#### A. Defendants' Cross-Motion for Summary Judgment

Plaintiff moves for summary judgment on Counts V (§1983 claim for procedural due process violation), VI (state law claim for procedural due process violation), and IX (violation of administrative due process). Defendants cross-move for partial summary judgment on the same claims. The Court analyzes Defendants' Cross-Motion for Partial Summary Judgment first because it disposes of Plaintiff's Motion for Partial Summary Judgment.

*1.     Count IX*

Plaintiff argues that the administrative procedure that Defendants followed in terminating him violated the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Under *Accardi*, Plaintiff argues that government agencies may not discharge employees in a manner inconsistent with their own regulations. Plaintiff asserts that certain provisions of the Code of Montgomery County Regulations (COMCOR) entitle employees with merit system status to appeal certain disciplinary action (e.g., dismissal) to the Merit Systems Protection Board (MSPB). *See* COMCOR 33.07.01.33, § 33-9; COMCOR 33.07.01.35, § 35-2. Plaintiff concedes that he voluntarily participated in an ADR process and waived his right to appeal. However, Plaintiff asserts that the waiver is invalid under *Accardi* because it conflicts with said regulations.

Plaintiff's argument fails for two primary reasons. First, at least in part, the collective bargaining agreement (CBA) between the County and Plaintiff's union governs the relationship between the County and Plaintiff. *See* Montgomery County Code, § 33-101; *see also* Doc. No. 36-1 at 1. The CBA provides that unionized employees like Plaintiff may voluntarily use the prescribed ADR process. *See* Doc. No. 24-1 at 7–8. The CBA further provides that employees "waive any right to file with MSPB on suspensions, demotions, and dismissal actions" where the employee utilizes the ADR process. *Id.* at 8. Yet the employee may grieve the ADR committee's recommendation if he disagrees with it. *Id.*

In this case, the undisputed evidence shows that the County adhered to these procedures. On July 19, 2011, the County sent Plaintiff a statement of charges enumerating the reasons that the County was considering terminating him. Doc. No. 24-2. Consistent with the CBA's plain

language, the statement of charges stated that Plaintiff's union could request an ADR conference on his behalf and that his participation was voluntary. *Id.* at 1.

On August 24, 2011, Plaintiff opted to participate in the ADR process by executing an employee acknowledgment agreement. Doc. No. 24-3. The employee acknowledgment states in boldface that

> I understand that my participation in the ADR process is voluntary. I further understand that by participating in this process, irrespective of the outcome, I will waive any right I may have to file an appeal with the Merit System Protection Board (MSPB) concerning the subject matter of this process.

*Id.* Likewise, Plaintiff checked the box on the employee acknowledgment next to text in boldface stating that "Yes – I wish to participate in the ADR process and I understand that in doing so, I am waiving my right to file an appeal with the MSPB." *Id.*

Plaintiff and his union representative participated in the ADR process. The ADR panel could not reach a unanimous recommendation. Doc. No. 24-4. After the hearing, the County notified Plaintiff that it would terminate him effective September 9, 2011. Doc. No. 24-5. The County's notice informed Plaintiff that, even though he had waived his right of appeal to the MSPB, the union could file a grievance under the CBA. *Id.* at 11. The union filed a grievance and the Parties participated in an arbitration hearing. On July 24, 2012, the arbitrator issued a comprehensive decision denying Plaintiff's grievance and finding just cause for Plaintiff's dismissal. *See* Doc. No. 24-6 at 14.

Plaintiff responds that the procedures described above are not procedures within the meaning of *Accardi* because they arise from the CBA and not a legislative enactment. This argument fails for various reasons. One, procedural rules in a collective bargaining agreement

5

adopted pursuant to section 33-101 of the Montgomery County Code may carry legislative force. *Cf.* Montgomery County Code, § 33-101. Indeed, the City Council for Montgomery County approved a resolution stating that section 33-101 "provides for collective bargaining by the County Executive with the certified representatives of County employees." *See* Doc. No. 36-1 at 1. Additionally, several courts have held that a grievance procedure from a collective bargaining agreement may satisfy due process. *See, e.g.*, *Dykes v. S. Pa. Transp. Auth.*, 68 F.3d 1564, 1572 n.6 (3d Cir. 1995) (citing cases). In short, the Parties do not dispute any material facts and Plaintiff's voluntary decision to use the CBA's ADR and grievance procedures in lieu of taking appeal to the MSPB fails to implicate the *Accardi* doctrine. Accordingly, the Court grants Defendants' Motion for Partial Summary Judgment as to Count IX.

    2.    *Counts V and VI*

Under Counts V and VI, Plaintiff asserts overlapping federal and state claims for violation of procedural due process. The Court's analysis applies equally to both claims because the due process clauses from the federal and Maryland's constitution "have long been equated." *Comm'n on Med. Discipline v. Stillman*, 435 A.2d 747, 760 n.9 (Md. 1981) (citation omitted).

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation and internal quotation marks omitted). The Supreme Court has "described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Id.* (citations and internal quotation marks omitted). "This principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally

protected property interest in his employment." *Id.* (citations and internal quotation marks omitted).

"[T]he pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 546. "[The] formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* (citations and internal quotation marks omitted). "In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* (citation and internal quotation marks omitted). Therefore, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* (citation and internal quotation marks omitted).

In this case, Defendants assume arguendo that Plaintiff had liberty and property interests in his employment with the County. Thus, the key question is whether the procedures surrounding Plaintiff's termination satisfied the essential due process demands of notice and a reasonable opportunity for a hearing.

A reasonable juror could only conclude that the at-issues procedures satisfied these demands. As for notice, before the ADR hearing, the County sent Plaintiff a statement of charges enumerating the reasons for which the County was considering terminating him. Doc. No. 24-2. The statement of charges is long and specific and, hence, constitutes an adequate explanation of Defendants' evidence. *See id.* Plaintiff received further explanation of Defendants' evidence at the ADR hearing. *See* Doc. No. 24-1 at 8 (requiring the committee to review "the recommended level of discipline and the facts of the case"). Plaintiff had an opportunity to present his side of the story because (1) he voluntarily chose to participate in the ADR process rather than appeal to the MSPB and (2) Plaintiff could make a presentation before the ADR committee. *See id.*

7

Plaintiff raises no meaningful counterargument to the proposition that he received a pretermination hearing. Plaintiff appears to assert that Defendants failed to give him notice of the hearing, and that this failure violated due process. However, as stated above, *Loudermill* requires only that the employer give the employee oral or written notice of the *charges* against him. Here, the uncontested record evidence establishes that Defendants sent Plaintiff a statement of charges. The inquiry ends there.

Plaintiff also appears to argue that the ADR process was not a hearing under *Loudermill*. Yet *Loudermill* clearly states that the pretermination hearing need not be elaborate and that the touchstone is whether it gives the employee a meaningful opportunity to present his side of the story. Expounding *Loudermill*, the Tenth Circuit has declared that the "pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted." *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989). Here, Plaintiff attended the ADR hearing where, under an explicit provision of the CBA, he had an opportunity to make a presentation up to thirty minutes long. Plaintiff does not allege that the committee denied him this opportunity. Thus, Plaintiff enjoyed an opportunity to clarify the most basic misunderstandings of the charges or to convince the committee that the facts and circumstances did not warrant his termination. Accordingly, a reasonable juror could only conclude that Plaintiff received a proper pretermination hearing.[1]

---

[1] Plaintiff also appears to argue that his waiver of the right to appeal to the MSPB was not knowing and intelligent. *See* Doc. No. 36 at 13–14. The Court disagrees. First, this argument seems to presuppose that the ADR procedure did not constitute a pretermination hearing under *Loudermill*. But Plaintiff received all the process he was due. Thus, Plaintiff did not waive any constitutional rights or, minimally, the rights were still respected. Second, assuming it occurred, the waiver was valid. The employee acknowledgement agreement states in two places in boldface that, by participating in ADR, Plaintiff was waiving his right to appeal to the MSPB. Besides being in boldface, one of the waiver clauses is set off from the rest of the language and has a box that Plaintiff checked. Furthermore, both Plaintiff and his union representative signed the agreement. Under these circumstances, the argument that Plaintiff did not knowingly and intelligently waive his right to appeal is unconvincing.

Plaintiff asserts three additional arguments to support his theory that Defendants deprived him of due process. First, Plaintiff argues that the subsequent arbitration did not satisfy due process because it lacked formality. Second, Plaintiff argues that the arbitration did not constitute an adequate post-termination hearing because the arbitrator admitted a hearsay statement. Third, Plaintiff argues that the arbitration violated due process because it was not held in a timely fashion.

These arguments are devoid of merit. The arbitration involved two days of hearings during which legal counsel represented the parties, examined witness, and submitted evidence. Twelve witnesses testified and the Parties submitted nearly forty exhibits, which resulted in two volumes totaling 445 pages. Furthermore, before the arbitrator closed the record, the Parties submitted detailed written arguments that they supported with case citations. *See* Doc. No. 24-6 at 1–2. Therefore, the arbitration bore the requisite degree of formality. *Cf. Garraghty v. Com. of Va., Dep't of Corrs.*, 52 F.3d 1274, 1284 (4th Cir. 1995) (citation omitted) (opportunity for a full hearing includes the right to call witnesses, produce evidence on one's behalf, and challenge the factual basis for the state's action).

The Court rejects the notion that the arbitrator's admission of allegedly inadmissible hearsay rendered the entire proceeding constitutionally suspect. The record reflects that the arbitrator considered and rejected Plaintiff's objection. Assuming this decision was improper, the record does not suggest that the admission of the hearsay tainted the entire proceedings. *Cf.* Doc. No. 24-6. Moreover, Plaintiff presumably had an opportunity to convince the arbitrator to reconsider this decision when he submitted detailed written arguments after the hearing. Additionally, Plaintiff admits that hearsay is not always inadmissible in administrative proceedings. *See Richardson v. Perales*, 402 U.S. 389, 402 (1971). Plaintiff's argument that the

arbitrator made erroneous evidentiary decisions seems to be a roundabout way of rearguing the merits of the arbitrator's decision. Although Plaintiff may personally disagree with the outcome, Plaintiff's mere disagreement is insufficient to create a triable issue regarding whether he received a procedurally adequate post-termination hearing.

The Court also rejects Plaintiff's argument that the arbitration was not held in a timely fashion. The *Loudermill* Court held that a "9-month adjudication is not . . . unconstitutionally lengthy *per se*." 470 U.S. at 547. In this case, the arbitrator issued his decision approximately ten and a half months after Defendants terminated Plaintiff, which is not significantly longer than the nine months at issue in *Loudermill*. Furthermore, Plaintiff has adduced no facts indicating that this delay owed to an improper purpose. Quite the contrary, the arbitration took place approximately six months after Plaintiff's termination, the Parties submitted their postarbitration written arguments two months after arbitration, and the arbitrator issued his decision about two months later. Therefore, the administrative proceedings were not unconstitutionally long.

The preceding analysis shows that no reasonable juror could conclude that Defendants' actions violated Plaintiff's procedural due process rights. Accordingly, the Court grants Defendants' Cross-Motion for Partial Summary Judgment as to Counts V and VI of the Complaint.

**B.      Plaintiff's Motion for Partial Summary Judgment**

Plaintiff argues in his Motion for Partial Summary Judgment that he is entitled to summary judgment on Counts V, VI, and IX. However, the preceding analysis establishes that Defendants are entitled to summary judgment on the same Counts. Consequently, the Court denies Plaintiff's Motion for Partial Summary Judgment.

**C.    Plaintiff's Motion for Leave**

Plaintiff seeks to supplement his Motion for Partial Summary Judgment with the deposition testimony of Arthur Wallenstein, the Director of Montgomery County Department of Corrections and Rehabilitation. According to Plaintiff, Mr. Wallenstein testifies that he did not delegate any duties to the ADR committee and that he did not know the identity of the committee panel before the ADR proceeding.

This testimony fails to create a genuine dispute of material fact. Mr. Wallenstein's alleged failure to delegate any duties to the ADR committee does not alter the facts that (1) Plaintiff received a statement of charges; (2) the CBA governs the relationship between Plaintiff and Defendants; and (3) Plaintiff voluntarily opted to participate in the ADR process instead of appealing to the MSPB. Further, Mr. Wallenstein's ignorance of the identity of the ADR panel is irrelevant to the issues before the Court. Therefore, the Court denies Plaintiff's Motion for Leave.

**D.    Motions for Extension of Time**

The Parties filed a Consent Motion for Extension of Time on December 17, 2012 that the Court granted the following day. Doc. Nos. 52–53. However, the docket does not reflect that the Clerk terminated the Motion. Therefore, the Court will order the Clerk to terminate the Motion.

On January 10, 2013, Defendants filed a Motion for Extension of Time to respond to other motions. Doc. No. 58. Plaintiff has indicated that he takes no position on whether the Court should grant this Motion. The record does not reflect that granting this Motion will prejudice Plaintiff. Accordingly, the Court grants Defendants' Motion for Extension of Time.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment, **GRANTS** Defendants' Cross-Motion for Partial Summary Judgment, **DENIES** Plaintiff's Motion for Leave, and **GRANTS** Defendants' Motion for Extension of Time. A separate Order follows.

| January 11, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |